## HUDSON *vs.* CROW.

1. An objection to the competency of a witness, on the ground of interest, must be distinctly made at the first opportunity, and cannot be subsequently raised; and if the party, in accepting service of interrogatories, stipulates that he thereby "waives no objection to their legality, pertinency, relevancy, or competency", this will not enable him afterwards to object to the competency of the witness on account of interest.

2. If the holder of a note, having bound himself by written contract to account for it to the owner, recovers judgment on it in his own name, and by private agreement with the sheriff, after sale under execution, takes the property at the purchaser's bid, he thereby becomes liable to the owner of the note for the amount in money, and cannot raise objections to the sale of which the defendant in execution might avail himself; and if the amount was lessened by expenses, court costs, &c., the *onus* of proving it devolves on him.

3. Nor is he entitled to a deduction for expenses incurred by him in pursuing the defendant in execution, who had secretly left the county, taking his property with him, when such expenses are not shown to have been necessarily incurred, nor to have been such as the bailor would be bound to pay.

4. Evidence of a demand of specie by the sheriff, by the direction of the plaintiff in execution, after the property had been bid off, and of the purchaser's offer to pay in current bank-notes with the difference between them and specie, is admissible as part of the *res gestæ*.

5. A general objection to an entire deposition, when a portion of it contains legal evidence, may be overruled.

APPEAL from the Circuit Court of Benton.

Tried before the Hon. ANDREW B. MOORE.

ASSUMPSIT, on the common money counts, by Daniel Crow against Samuel P. Hudson, " to recover the proceeds of a note which plaintiff placed in defendant's hands for collection, executed by Williamson Williams, for $665 52, and dated on the

15th *March*, 1841." The only plea was the general issue, with leave to give any matter in evidence which might be pleaded in bar.

On the trial, the plaintiff read in evidence a receipt, signed by S. P. Hudson & Co., of which the following is a copy:—

"Received of Daniel Crow one note of hand on Williamson Williams, for $665 52, dated *May* 15, 1841, due one day after date, and payable to Wm. Raiford or bearer; for which we promise to account to the said D. Crow, when he pays us $300 in South Carolina funds, which is to be paid in two or three months, with interest from this date. July 1, 1841."

"The plaintiff introduced evidence, also, tending to show that S. P. Hudson caused suit to be brought upon said note, in the name of the payee, for the use of himself, against said Williams, upon which a judgment was rendered 10th July, 1843; and that an execution, issued on this judgment, was levied on eighteen bales of cotton as the property of the defendant. There was proof, also, tending to show that the sheriff afterwards exposed said cotton to public sale, and sold it in two lots of nine bales each; that said Hudson became the purchaser of one of said lots, at a certain price per pound, and that one Woodruff bid off the other, but failed to take said cotton, or to pay the price therefor. The plaintiff then proved, that the sheriff, at the request of Hudson, after said cotton had been bid off by Woodruff, demanded specie, and that Woodruff, not having the specie, offered to pay for it in South Carolina funds, with the difference between such funds and specie, which the sheriff declined to receive. To the introduction of this proof the defendant objected, but his objection was overruled, and the evidence admitted; and to this the defendant excepted.

"The plaintiff introduced proof, also, tending to show that, on the day after said sale, and after Woodruff surrendered his bid, Hudson agreed with the sheriff (but not with Woodruff's consent) to take the lot of cotton bid off by Woodruff at Woodruff's bid, and that he did take possession of said cotton. To the making of this proof, also, the defendant objected, but his objection was overruled, and the evidence admitted; and to this defendant excepted.

"The defendant then introduced proof, tending to show that,

soon after the rendition of said judgment, and before the levy of an execution upon said cotton, the said Williams secretly left the county, carrying with him his property, which was of value ample to pay said judgment, and that he (defendant) went in pursuit of said Williams, for the purpose of collecting this debt out of him; that he was gone after said Williams some fifteen days; that he furnished his own horse; that his expenses were about two dollars per day, and his services worth five dollars per day; but there was no proof that he ever overtook said Williams or his property. The plaintiff then offered the following deposition of said Williamson Williams" (setting it out at length); "to the reading of which deposition the defendant objected, on the ground that said Williams was interested in this suit, and his deposition was therefore inadmissible; and further, because said testimony was illegal and irrelevant. The objections were overruled, and the deposition allowed to be read; and to this the defendant excepted."

This deposition was taken on interrogatories, of which the defendant's attorneys acknowledged service, and waived notice; adding, however, "But we waive no objection either to the affidavit, or to the legality, pertinency, relevancy, or competency of said interrogatories." The witness testifies, in substance, that the note mentioned in the receipt was given for a part of the purchase money of a tract of land which he had bought of said Raiford; that he left the land unsold, and a crop of cotton growing on it; that he received a letter from Hudson, dated April 1, 1844, "in which he says, 'If you will pay us the amount of the notes we hold against you, we will endeavor to make the judgment in Alabama in some way or other; the amount of the notes now due is $166 95, interest till paid';" that the notes here referred to were due by witness to S. P. Hudson & Co.; that Hudson was at his house in March, 1845, and witness then paid him $151 on those notes, but said judgment was not mentioned.

"The court charged the jury, among other things, as follows:

"1. That the defendant could only be allowed in this suit such expenses incurred by him as were actually necessary for the preservation of the note described in said receipt, and that he was not entitled to an allowance for either the value

of the use of his horse, or the value of his time in the pursuit of Williams.

"2. That the defendant was not bound to pursue said Williams beyond the limits of this State; and that if he did so, he would not be entitled to recover his actual expenses incurred in such pursuit.

"3. That the defendant should be charged in this suit with the amount of cotton bid off by him, at the price bid by him; and also with the amount of cotton bid off by Woodruff, if they believe from the evidence that he afterwards agreed with the sheriff to take it at Woodruff's bid, and did take it.

"To each of these charges the defendant excepted, and asked the court to charge the jury, that if they believed from the evidence that Hudson did not buy one of the lots of cotton sold at sheriff's sale, but the same was bid off by another, and that on the day after the defendant, by private agreement with the sheriff to pay the amount at which Woodruff had bid it off, took possession of it, then he would not be responsible for that amount in this suit; which charge the court refused to give, and the defendant excepted.

All the rulings of the court set out in the bill of exceptions, as above stated, are now assigned for error.

MORGAN & MARTIN, for the appellant:

1. The court erred in admitting the deposition of Williams. He was directly interested in the suit.—Alexander v. Trask, 20 Ala. 805; Moore & Jones v. Henderson, 18 ib. 232; Emerton v. Andrews, 4 Mass. 653; McGrew & Beck v. Governor, 19 Ala. 89; 1 Greenl. Ev., p. 543, and note 4.

2. The levy of an execution on property by the sheriff does not divest the title of the defendant, who may subsequently convey the property subject to the execution.—Atwood v. Pierson, 9 Ala. 656. His title can only be divested by a public sale, under and by virtue of the execution. If the sheriff sells the property at private sale, or disposes of it in any other way than as sheriff, he becomes a trespasser, and no title passes to his vendee.—Ormond v. Faircloth, 2 Hayw. 336; 1 Murph. 35; Andress v. Broughton, 21 Ala. 200. The sheriff having made a disposition of the property unauthorized by law, he became a trespasser *ab initio*. Such is always the

case where there is an abuse of legal process.—The Six Carpenters' case, in 43d vol. Law Library, p. 130; Allen v. Crofoot, 5 Wend. 506.

3. Williams could have maintained trespass against the sheriff, and trover or detinue against Hudson; and yet the court charged the jury, that Hudson must be charged in this suit (which is for money had and received by Crow) with the value of this cotton as evidenced by the price he agreed to pay the sheriff for it; and that, too, in the absence of any ratification of the sale by the owner. Crow's ratification, or waiver, amounts to nothing; indeed, he could not ratify the sale.— Van Dyke v. The State, 23 Ala. It is true that the sheriff would be liable in a proper suit; but this action only lies for money actually received, while not one dollar is shown to have been received; and it is not pretended that the sheriff has treated the sale as a judicial one, by making an entry on the execution in reference to it, nor that Hudson has ever parted with the possession of the cotton.—Crow v. Boyd's Adm'r, 17 Ala. 51; Jones v. Hoar, 5 Pick. 285; Gilmore v. Wilbur, 12 *ib.* 120; Murray v. Pate, 6 Dana's R. 335.

4. Aside from these errors, the charge cannot be sustained. To charge the defendant at all, the sales of the cotton must be held to have been regularly made; and if so, the costs, sheriff's commissions, and attorney's fees should have been deducted, and the defendant charged only with the remainder. Story on Bailments, §§ 306, 357; Trotter v. Crockett, 2 Port. 413; Stocking v. Conway, 1 *ib.* 260; Russell v. Hester, 8 Ala. 535; Cocke v. Chaney, 14 *ib.* 65. These cases show, too, that Hudson should have been allowed pay for his time, trouble, and expenses in following the debtor for the express purpose of collecting this debt. The law made Hudson the agent of Crow to collect this debt, and imposed upon him the exercise of ordinary diligence. Laches on his part would have rendered him liable for the whole debt, and a failure to follow the debtor, under the circumstances proved, would have been gross negligence.—See authorities *supra*, especially Cocke v. Chaney, and Russell v. Hester.

5. The testimony in relation to the demand of specie by the sheriff at the sale, was irrelevant, and should not have been admitted. It was well calculated to mislead the jury, and to

prejudice Hudson's defence in their minds. The law required the payment of specie, and nothing else would have been a payment.—Haynes v. Wheat & Fennell, 9 Ala. 239.

6. The doctrine of estoppel cannot be applied to any part of this case, against Hudson and in favor of Crow. Estoppels are mutual, and it is clear that Crow was not (and could not be) estopped by anything appearing in the record; and consequently he cannot set up any of these matters by way of estoppel.—Hudson v. Crutchfield, 23 Ala.

7. Nor can the doctrine of waiving the tort and suing in assumpsit be applied to the case. The right to waive the tort and sue in assumpsit is confined to the legal and real owner of the property as to which the tort was committed, and Crow was not the owner of the cotton. He cannot maintain assumpsit for the cotton bid off by Woodruff, and taken by Hudson at private sale from the sheriff, because there is no contract, express or implied, as between Crow and Hudson.—Crow v. Boyd, 17 Ala. Contracts to pay money are implied only in favor of the legal owner of the money, or of the property wrongfully converted into money.—Branch Bank at Montgomery v. Sydnor, 7 Ala. 308.

WHITE & PARSONS, *contra* :

The proof that Hudson demanded specie for the cotton, and that Woodruff offered to pay in South Carolina funds, was proper to show that the bid was a good one, and that Hudson was offered the kind of funds which Crow was by his contract to pay him. It was competent, also, to show that Hudson had been offered the money, or its equivalent, for the cotton bid off by Woodruff. Woodruff was bound to the sheriff for his bid; and after he had surrendered it, Hudson, who was plaintiff in the execution, cannot be heard to complain that he was permitted to take it at Woodruff's bid. It was as though he had himself bid that amount for the cotton, and a corresponding credit should have been entered on the execution.—Perry v. Williams, Dudley's R. 44; Jones & Hughson v. Burr, 5 Strob. R. 147; Moore v. Barclay, 18 Ala. 673.

Williams was not incompetent as a witness from interest. After the sale of his property, he was discharged to the extent

of the amount for which it was sold, whether entered on the execution or not.—Chenault's Adm'rs v. Walker, 22 Ala. 284 ; 18 *ib.* 673. But the objection to the deposition was general, and it came too late.

Hudson was the holder of the note, and owner as pledgee. He was interested in recovering the amount, and if he voluntarily assumed to incur expense, in following Williams, he cannot charge Crow with it.—Magee v. Toland, 8 Port. 36. No man can make another his debtor unwillingly. Hudson was not bound to pursue Williams at all. He had not undertaken to collect the note : he only bound himself to account for it, when Crow paid him three hundred dollars; and unless requested by Crow, he was not bound (nor did he have any right) to institute suit upon the note.—Story on Bailments, §§ 200, 274, 306, 358, 389; 2 Murph. 291; 1 H. Black. 83; 1 Term R. 17, 21 ; 16 Ala. 57.

The pawnee is only answerable for ordinary neglect.—2 Kent's Com. 579. Would Crow have been discharged, if Hudson had rested with suing to judgment and execution ? The contract of bailment, even if he was required to sue at all, cannot be said to extend further than this ; and if he did more, it was voluntary on his part, and Crow was not bound to repay his expenses in so doing.—Noland v. Clark, 10 B. Mon. 242 ; Goodall v. Richardson, 14 N. H. 572. When the pledge is a promissory note, the pledgee is only entitled to sue for and recover the money. This is the extent of his power, unless he has notified the pledgor to redeem.—Story on Bailments, § 321; 12 Johns. 149; Cortleyou v. Lansing, 2 Caines' Cas. 201.

Hudson, being plaintiff in the execution, could take Woodruff's bid ; and by crediting the execution with the amount, or directing the sheriff to do so, he became liable to Crow for the excess over and above what was due him.—Stewart v. Connor, 9 Ala. 803; Strickland v. Burns, 14 *ib.* 511.

CHILTON, C. J.—The court below did not err in refusing to exclude the deposition of Williams, conceding that he was an interested witness ; for it is not permitted to a party, knowing of a witness' interest, to allow his adversary to go on and examine him by deposition, raising no objection on

the ground of interest; thus enabling himself to read the deposition, if it should prove beneficial to his side of the case, but, in the event it should prove detrimental to him, then for the first time to spring the objection at the trial and exclude it. The rule which usually obtains, of not allowing questions to be asked upon a cross-examination which properly belong only to an examination upon the *voir dire*, is founded upon a similar reason—the objecting party ought not to be allowed to speculate upon the testimony of a witness whose interest is known to him. The true rule requires the party against whom an interested witness is offered, to elect whether he will permit him to be examined or not, as soon as the opportunity to make such election is offered; and if he does not do so, he is presumed to waive it forever. He is then said to be "*in mora*", and any subsequent objection on account of the witness' supposed interest comes too late.—1 Greenl. Ev., § 421, and notes, (5th ed.) pp. 529-31.

The defendant's attorneys in this case, when they accepted service of the interrogatories, say they "waive no objection to the legality, pertinency, relevancy, or competency of the interrogatories"; but this raises no objection to the witness' interest, which must be distinctly made, or it is waived. Indeed the inclusion of these is an exclusion of the objection to the witness' interest.

Hudson, by the consent of the sheriff, having been substituted in the place of Woodruff, to take the cotton at the bid of the latter, in lieu of so much money, cannot say that he was committing a trespass, and should not therefore be charged with the price as so much money. We must intend the sheriff did his duty, and made the proper endorsements of credits on the *fi. fa.;* and if the defendant in the execution does not complain, but allows the sale to stand as a satisfaction of the execution, it does not lie in the mouth of the purchaser to make complaints for him. He received the cotton as money, at the price at which it was bid off by Woodruff, and is chargeable with money, as between himself and Crow, to whom he bound himself by his receipt to account.

The proof of a demand of specie by the sheriff, after the cotton was bid off by Woodruff, at the request of Hudson, and the offer of Woodruff to pay in current bank-notes and

to make good the difference, was not illegal. It was explanatory of the circumstances of the sale, and of the manner in which Hudson obtained the cotton, by pushing Woodruff out that he might take his bid. It tends further to show that Hudson took the cotton as money, deeming it more valuable. It was emphatically part of the *res gestæ*.

The objection, that a portion of the proof made by Williams is illegal, is not well taken. It was a general objection to the whole deposition, a portion of which was clearly legal, casting upon the court the duty of sifting the proof in order to separate the legal from that which was not. The court is not bound to do this, and in such cases may properly overrule the objection.

When this case was first before us, the record showed that the judgment against Williams had not been satisfied,—that the sale of the cotton left a balance due, and thereby raised the inference that the cost must be first deducted from these sales. No such facts appear now before us, and hence the opinion then delivered reversing the judgment by reason of a charge to the jury, " that the amount of Hudson's bid for the cotton should constitute the measure of the plaintiff's recovery", does not apply. Hudson is clearly liable to the amount of his bid, as though he had received that much money. If that sum has been lessened by expenses, court costs, or the like, the burthen of showing this was devolved on him; and as the record fails to show any such expense, or any court cost which is a charge on the fund, we should violate a cardinal rule of decision, to travel out of the record and *presume* the existence of such charge to *reverse* the judgment; thus *presuming* against the regularity of the proceedings in the court below.

In relation to the expenses incurred by Hudson "in pursuing Williams when he secretly left the county, taking his property with him", we need only observe, that the bill of exceptions fails to show that such expenses were *necessarily* incurred, or that they are such as Crow would be bound to pay. The record does not purport to set out all the proof, and the fact may be, that Williams left property sufficient to satisfy the judgment. It appears the note was given for land, and the inference is that a lien existed on that for its payment.

Besides, there were eighteen bales of cotton left behind by Williams; whether any more property does not appear. But, however this may be, the party excepting must not leave the court to indulge in presumption as to the necessity for Hudson's pursuing Williams to secure or collect this judgment. All reasonable intendments are the other way, as we have uniformly decided. Hence we might reasonably conclude that Hudson's object in the pursuit was to secure the debt due to him of $166, instead of the judgment; especially since it appears he went to the defendant's residence afterwards, and collected most of it, without even naming the judgment, as appears by Williams' testimony.

Considering the charges with reference to the proof which is set out in the bill of exceptions, we are of opinion they were correct—at least that there was no error of which the appellant can complain. Whether one of these charges, as to Crow's liability for the expense incurred in pursuit of Williams to the State line, is not too favorable for the appellant, is not a question for consideration.

Let the judgment be affirmed.

RICE, J., having been of counsel, did not sit in this case.