## HAIR ET AL. *vs.* LITTLE ET AL.

[TRESPASS QUARE CLAUSUM FREGIT ET DE BONIS ASPORTATIS.]

1. *Admissibility of parol evidence to affect consideration clause of deed.*—Where the consideration expressed in a deed is a certain sum of money in hand paid, parol evidence is admissible to show that only a part of the money was paid, and that the balance was to be applied in discharge of certain debts due from the grantor to third persons.

2. *Objection to competency of witness, when raised.*—An objection to the competency of a witness on the ground of interest, when known at the time of filing cross-interrogatories, must be distinctly made before the witness is examined.

3. *Declarations explanatory of possession.*—The declarations of a party in actual possession of personal property, tending to explain his possession, are admissible evidence as part of the res gestæ.

4. *Liability of joint trespassers.*—In trespass against two, if the evidence authorizes exemplary damages against one, the other, if he is shown to have acted in concert with him, is liable to the same extent.

5. *What is abstract charge.*—A charge is not abstract, when there is any evidence, however weak, at all tending to support it.

6. *Burthen of proving fraud.*—Where plaintiff and defendant both claim under purchases from the same person, by conveyances valid on their face, the party alleging fraud in the purchase of the other is bound to prove it; but when one of the conveyances is impeached for fraud, the burthen of proof is changed, and the evidence of fraud must be overcome by counter evidence of bona fides.

7. *Measure of damages.*—In trespass for taking and carrying off slaves, the court charged the jury, "that, if they found for the plaintiffs, the measure of damages would be the highest value of the slaves at any time between the taking and the trial; that, in addition to this value, they might allow interest thereon, or might look to the value and hire as some guide in coming to a conclusion, but were not bound by them": *Held,* that the charge was not erroneous.

8. *Exemplary damages, when allowable.*—Exemplary damages, or " smart money", may be allowed to the plaintiff, in trespass for taking and carrying away his goods, when there are circumstances of aggravation attending the trespass.

9. *Charge held erroneous, because invading province of jury.*—In charging the jury that they might give exemplary damages if the trespass was accompanied with circumstances of aggravation, the judge " playfully remarked, in the way of illustration, '*such damages as would teach the old gentlemen not to violate the Sabbath, nor injure his health by riding in the night, nor interfere with the rights of others*'": *Held*, that the instructions were erroneous, because the remarks were calculated to make the jury believe that the judge thought the facts justified heavy exemplary damages.

10. *Absolute sale by bailee held conversion.*—An absolute sale of a slave, by one who has possession under a contract of hiring, does not transfer to his vendee the right to the unexpired term, but is a violation of the contract of hiring, and gives the owner the immediate right to take peaceable possession, if he can.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. GEO. D. SHORTRIDGE.

This action was brought by Gray Little and Patrick S. Cromwell, the appellees, against James Hair and Sterling H. Jones, " to recover damages for breaking and entering the plaintiffs' close, and carrying off sundry slaves, mules, and wagons, the property of plaintiffs." The defendants pleaded, jointly and severally, in short by consent, not guilty, with leave to give in evidence any special matter of defence. All the evidence in the case is set out in the bill of exceptions; but it is only necessary to notice particularly the facts bearing on the points here decided.

The plaintiffs claimed the slaves and other property under a purchase from one Blake Little, by bill of sale dated May 29, 1848, which purported to be made " in consideration of the sum of $32,000 in hand paid"; while the defendant Hair claimed the slaves under a purchase from said Blake Little, by bill of sale dated May 26, 1848, which recited a consideration of $3,539 55. The plaintiffs offered in evidence the deposition of Henry G. Little, who was a son of Blake Little, and the subscribing witness to the conveyance from said Blake Little to the plaintiffs. The fourth interrogatory propounded to this witness, and the answer thereto, were as follows: " *Int. 4.*—What did Gray Little and Patrick S. Cromwell give or do, or what were they to do, or what did they

assume to do, in consideration of the said conveyance and bond? If they assumed the payment of debts for the said Blake Little, please state what amounts they assumed, and to whom they were payable. What kind of a sale was it? What was said at the time, or at any other time, about its being a mortgage or deed of trust"? *Answer.*—"*They were to give about the sum of* $32,000. *They assumed to pay debts in favor of Bliss, Russell, Mrs. Vandegraff, Ash, Abner Hearts, Steele, and others not recollected.* ' The amounts also not recollected. I heard the sale made, and never' heard any thing said about a mortgage or deed of trust." The defendants objected to that portion of this answer which is italicized, " on the ground that it showed a consideration different from and inconsistent with the consideration recited in said bill of sale"; but the court overruled their objection, and they excepted. This witness further testified, "that he saw no money paid at the time the bill of sale was given, and heard no agreement to pay money; that he saw Gray Little, a few days after the sale, pay Blake Little $700 or $800, but he does not know whether it was in consideration of the sale or not."

The plaintiffs then offered in evidence the deposition of said Blake Little, after proving the execution of a release from themselves to him, which was attached to the deposition. This deposition was taken on interrogatories and cross-interrogatories; and the defendants, before filing their cross interrogatories, reserved the following exceptions to the competency of the witness: " The defendants except to the competency of Blake Little to impeach any contract made by him with the defendant Hair; also, to prove that, subsequent to his conveyance to Hair of the slaves mentioned in the interrogatories, he conveyed them to another or others; also, to his competency to prove the validity of such subsequent sale and conveyance, and the invalidity of his sale to Hair; also, to his competency to prove any facts tending to any of said foregoing matters; and defendants except to each and every interrogatory tending to obtain such testimony." The defendants objected to the reading of the deposition of this witness, " on the ground that it showed the witness to be incompetent from interest; but the court ruled that he was

competent, and allowed the deposition to be read; to which the defendants excepted."

Blake Little testifies, among other things, that he and Hair were joint administrators on the estate of one Jenkins; that he purchased certain negroes, at a sale made by them, to the amount of about $3,000, but had given no note for them; that Hair had filed a bill in chancery against him, for the purpose of having the amount coming from the estate of Jenkins to him (Little) settled upon his (Little's) wife; that Hair came to his house, with the bill, to get him to acknowledge service, and said that they would prefer to have the negroes, and to let the money go to pay his debts; that it was agreed that he should keep the negroes until the chancery suit was ended, at which time those not settled on his wife were to be returned to him, and he was to pay the balance due by him on the purchase of the negroes at the sale; that under these circumstances he gave Hair the bill of sale; that the negroes were not produced, no particular price was put on them, and there was no change of possession. He further testifies, that his conveyance to the plaintiffs was made a few days before he left the State, and that they paid him $800 on the day of sale; and he appends to his deposition, as an exhibit, an obligation executed to him by said Blake Little and Cromwell, on the 31st May, 1848, by which they bound themselves, in consideration of their purchase on the 29th May of all his land, negroes, and other property, to pay outstanding debts against him to the amount of $35,000.

The plaintiffs then proved that they had paid all the debts specified in this obligation, except two small ones amounting to about $450, as to the payment of which there was no proof. They then introduced one Hiram Steele as a witness, who testified that, at the time the conveyance to plaintiffs was made, he and one Buffington, since deceased, were overseers for said Blake Little on his two plantations; "that said Little did not tell him he had sold the property he was overseeing, nor that he was going away not to return any more, but told him that he was going to the springs for his health;" that plaintiffs afterwards agreed to pay his wages, and he continued to act as overseer for them; and that he saw two of the negroes now in controversy on the plantation which

Buffington was superintending. " The plaintiffs then asked said witness, whether he had heard said Buffington, while in possession of the property, and after said Blake Little had left, say under whom he was holding the possession of the plantation and slaves over which he was overseer. To this question, and to the answer thereto, the defendants objected; but the court overruled their objection, and allowed the witness to answer; who thereupon stated, that said Buffington said, he was overseer for Gray Little and Patrick S. Cromwell,—that he had had one master, and now he had two'; and to this ruling of the court the defendants excepted."

" The plaintiffs introduced one Tureman as a witness, who proved that, in November, 1848, he was in the employment of the defendant Hair, who was a practicing lawyer; that one Sunday evening in that month, the next day being the first day of the Fall term of the circuit court of Sumter, one of the negroes now sued for came to Hair's house, with a letter informing him that the negroes sued for would be sent to Mississippi the next day by the plaintiffs, to be sold, unless he came up and attended to his own interests; that witness and said Hair started off immediately to the house of Mrs. Little, said Blake's wife, after the negroes sued for; that Hair left directions for a wagon to follow after them, to bring down the negroes; that they got fresh horses at Gainsville, and arrived at Mrs. Little's about midnight; that Hair went into the house, and told Mrs. Little he had come for said negroes; that the negroes were all inside of Mrs. Little's yard, and said Hair, assisted by witness and the defendant Jones, brought them away; that Mrs. Little was living on the plantation on which said Blake resided at the time he left, and is a sister of said Hair's wife; that they took some mules and horses from the stables on the premises occupied by Mrs. Little, and used them in bringing said negroes away, until they met Hair's wagon, when they were sent back; and that they got back to Livingston about 10 o'clock the next day. The plaintiffs then proved the value of the negroes sued for, both at the time they were taken and since, but the proof showed that their value since they were taken was much greater than at that time; and the evidence of their value, at the time of the taking and since, was conflicting.'

The defendants, after giving in evidence Hair's bill of sale for the negroes, read the deposition of Mrs. Little, the wife of Blake Little, who testified, that said Blake was indebted to Hair, to the amount of about $3,300, due January 1, 1847, for property sold by him as administrator of one Jenkins; that the slaves in controversy were sold and conveyed by said Blake to Hair, in her presence, on 26th May, 1848, in payment of this debt; that a fixed price was put upon each; that the sale was absolute and unconditional; that Hair hired the negroes to said Blake, after the sale, and they continued in said Blake's possession; that Blake left the country a few days after the sale; that she was in actual possession of the negroes when Hair took them, and of the premises and stables, which belonged to Dr. Allgood; that the plaintiffs never had possession of either the premises or the slaves. They also offered the deposition of Mrs. Beavers, which corroborated the testimony of Mrs. Little; the deposition of Robert· H. Smith, tending to prove the *bona fides* of Hair's purchase; the depositions of Mrs. Buffington and Dr. Allgood, corroborating Mrs. Little's testimony as to the possession of the slaves; evidence showing that the premises, on which the alleged trespass was committed, did not belong to the plaintiffs; evidence showing that Blake Little was insolvent at the time the conveyance to the plaintiffs was executed, that suits were pending and judgments recovered against him, and that he left the State under the pretence that he was going to some springs for his health; and a transcript from the records of the orphans' court, showing that Hair, on final settlement of the estate of Jenkins, was charged with the amount of Blake Little's purchases. .

The plaintiffs propounded interrogatories under the statute to Hair, and read his answer to the second interrogatory as rebutting evidence; in which answer Hair states that, at the time of his purchase from Blake Little, he hired the slaves to Little, by a written contract, for the sum of $10, until the estate of Jenkins should be settled. The defendants read in evidence said Hair's answers to the other interrogatories, in which he stated that he purchased the slaves from Little, and paid him a full and *bona fide* consideration for them. '

This is the substance of all the evidence in the cause; and

the bill of exceptions states, that, " among other questions in the cause, were these : first, whether the sale of the negroes by Blake Little to said Hair was fraudulent, either in law or fact; and, secondly, if it was, whether the plaintiffs were subsequent *bona fide* purchasers of the same negroes from said Blake."

" The court charged the jury, among other things,—

" 1. That if either party alleged fraud in the conveyance under which the other claimed, the burthen of proving it lay on the party alleging it; but, after that attack was made, and the conveyance impeached, it devolved on the party setting up the conveyance to show that it was *bona fide* and for a fair consideration.

" 2. That, ordinarily, if the consideration of a conveyance is proved to be different from or inconsistent with the consideration recited in it, it is a badge of fraud; but that this rule only applies where the consideration proved is less or greater than that recited, and does not apply where a money consideration is expressed, and something else of equal value is proved to have been paid or promised.

" 3. That if the jury should find for the plaintiffs on the ground of title, the measure of damages would be the highest value of the slaves at any time between the taking and the trial; that, in addition to this value, they might allow interest thereon, or might look to the value and hire as some guide in coming to a conclusion, but were not bound by them; and that, in addition to the damages thus ascertained, the jury might, if the taking was with circumstances of aggravation, give smart money, or exemplary damages; and playfully remarked, in the way of illustration, 'such as would teach the old gentleman not to violate the Sabbath, nor injure his health by riding in the night, nor interfere with the rights of others.'"

The court also charged the jury, at the request of the plaintiffs,—

" 1. That if Hair's purchase on the 26th May was valid, and he then hired the negroes to Blake Little from that time until the estate of said Jenkins should be settled up; and if said Little, before the termination of said hiring, sold them to plaintiffs, and gave them possession,—they became entitled

by the purchase to the possession and service of said negroes until the estate of Jenkins was settled up; and that if Hair, in the meantime, took the negroes from plaintiffs' possession forcibly, or without their consent, he was guilty of a trespass therein, and is liable to plaintiffs to the extent of the value of the services of the negroes for the remainder of the term for which they were hired; and that the jury may, in their discretion, if the taking was with circumstances of aggravation, add smart money to the actual damage."

The defendants excepted to each one of these charges; and they now assign them as error, together with the rulings on the evidence to which exceptions were reserved.

TURNER REAVIS, for the appellants, made these points :

1. To enable the plaintiffs to recover, it was necessary for them to prove that they were purchasers for valuable consideration and in good faith, and that Hair was not; and to do this, it was necessary for them to prove, among other things, the consideration expressed in their conveyance.—Eddins v. Wilson, 1 Ala. 237; Bryant v. Hall, 21 *ib.* 264. The consideration expressed, was an executed, money consideration; while the consideration which the evidence established, was not money, and was executory. The objection to this evidence, therefore, ought to have been sustained; for, when a conveyance is impeached for fraud, by a creditor or purchaser of the grantor, the party claiming under it will not be allowed to prove, in support of it, any other consideration than that expressed.—Murphy v. Br. Bank, 16 Ala. 90; Eckles & Brown v. Carter, 26 *ib.* 563; Sewall v. Baxter, 2 Md. Ch. Decisions, 447; Betts v. Union Bank, 1 Har. & J. 175; Hildreth v. Sands, 2 Johns. Ch. 35; Jones v. Sasser, 2 Dev. & Bat. Law R. 452; 2 Phil. Ev., (C. & H.'s Notes,) p. 369; 4 *ib.* 619, n. 369. The rule recognized by this court in the two cases above cited, and by the courts of Maryland, New York and North Carolina, is in exact conformity with the English decisions, and is founded on good sense, good morals, and public policy; and the facts of this case peculiarly show the necessity for adhering to it, whenever a conveyance is assailed as having been fraudulently made.

The case in 7 Pick. 533, cited by the counsel for the

appellees, is not sustained by any authority. The cases in 3 Watts, 16 Wendell, and 4 Porter, were between the parties to the conveyance, and therefore within the rule adopted in Eckles & Brown v. Carter, *supra*. The case of Graham v. Lockhart, 8 Ala. 9, proceeds on the ground that the evidence offered did not vary the quality of the consideration, and is in exact conformity with the general rule.

2. Blake Little was an incompetent witness from interest. He was interested in sustaining the conveyance to the plaintiffs, and their release did not restore his competency.—Wood v. Braynard, 9 Pick, 322; Woods v. Skinner, 6 Paige, 76, and cases cited on page 81. If the witness spoke the truth, his interest was not balanced; the sale to Hair not being real, but intended to secure a benefit to Little's wife.—Jones v. Hoskins, 18 Ala. 489.

3. The declarations of Buffington, although he was in possession of the property, ought not to have been admitted in evidence. The plaintiffs themselves had proved that his possession was acquired as overseer of Blake Little; and the character thus given to it was to be presumed to continue until the contrary is shown.—Powell v. Knox, 16 Ala. 370. The contrary could not be shown by his declarations; for the effect of such evidence would be, to prove a contract between him and the plaintiffs, or between them and Blake Little. Mims v. Sturdevant, 23 Ala. 664.

4. The first charge given by the court, of its own motion, is erroneous. The plaintiffs were bound to prove, to entitle themselves to a recovery, not only that Hair's purchase was fraudulent in law or in fact, but that they were purchasers for a valuable consideration and in good faith. The burthen of proof was on them, as plaintiffs, not only to impeach Hair's purchase, but to prove the *bona fides* of their own.—Eddins v. Wilson, 1 Ala. 237; Nolen v. Gwyn, 16 *ib.* 725; Jewett v. Palmer, 7 Johns. Ch. 65; Bryant v. Hall, 21 Ala. 264; White & Tudor's Leading Cases in Equity, vol. 2, part 1, pp. 112-13.

5. The second charge given was erroneous.—Brackett v. Wait, 6 Vermont, 411; Borland v. Walker, 7 Ala. 269; 11 Sm. & Mar. 469.

6. The third charge given is erroneous for several reasons. 1. Because it did not lay down the measure of actual damage

correctly. The value of the property at the time of the taking, with interest on that value, is the measure of actual damage; and no other damages for the detention or conversion can be given.—2 Greenl. Ev. (3d ed.) § 253; 1 App. (M.) 361; 20 Conn. 211; 4 Blackf. 348; Sedgwick on Measure of Damages, 549. 2. Because it authorized the jury to impose exemplary damages, which were not allowable.—2 Greenl. Ev. (3d ed.) § 253, note 2. If, however, such damages are recoverable as a general rule, there was no evidence in this case which authorized their recovery.—14 Ala. 698; 4 Blackf. 348; Sedgwick on Damages, 549. 3. Because that portion of the charge which related to exemplary damages, was calculated to prejudice the jury against Hair. 4. Because it assumed that Hair had violated the Sabbath, which was a question for the determination of the jury; that Hair was an "old gentleman," when there was no evidence of the fact; that he had injured or would injure his health by riding in the night, when there was no evidence to that effect; and that he had violated the rights of others,—the very question which the jury were to try.—Hollingsworth v. Martin, 23 Ala. 591; Whitsitt v. Slater, ib. 626. 5. Because the charge should have been restricted to Hair's liability.

7. The first charge given at the request of the plaintiffs, was erroneous for several reasons, but principally because it asserts that if Little, while holding the slaves under a contract of hiring, sold them to the plaintiffs, and delivered the possession to them, the plaintiffs thereby acquired Little's right to the unexpired term, and that Hair, by taking them without their consent before the expiration of the term, became a trespasser. The sale by Little to the plaintiffs, accompanied by delivery of possession, was a conversion, and a breach of his contract of hiring, and authorized Hair to take peaceable possession wherever he could find them; and since the proof showed that he did take them peaceably, he could not be a trespasser.—Story on Bailments, §§ 396, 413; Sargent v. Gile, 8 N. H. 325; Nelson v. Bondurant, 26 Ala. 341; Sanborn v. Coleman, 6 N. H. 14; Abney v. Kingsland, 10 Ala. 365; Hooks v. Smith, 18 ib. 342; Moseley v. Wilkinson, 24 ib. 416; Tucker v. Magee, 18 ib. 104; Farrant v. Thompson, 16 E. C. L. R. 62; 3 Stark. Ev. 1493. The hiring

of a slave is, in many respects, analogous to a leasing of land; in which case, if the tenant convey in fee, it is a disseizin, which authorizes the landlord to enter, or to bring trespass or ejectment.—3 Peters, 49; 7 Wheat. 107; 1 Johns. Cases, 36, 43; 5 Cowen, 134; 5 Peters, 402.

S. F. HALE, *contra*, contended,—

1. That the evidence of Henry G. Little only showed that the money mentioned in the consideration clause of the deed was not paid in fact, but only agreed to be paid; and that parol evidence is admissible for that purpose, even when the conveyance is impeached for fraud.—Eckles & Brown v. Carter, 26 Ala. 563; Johnson v. Boyles, . *ib.* 577; Burbank v. Gould, 15 Maine, 120; McRea v. Purmort, 16 Wend. 460; Bullard v. Briggs, 7 Pick. 533; Johns v. Church, 12 *ib.* 557; Jack v. Dougherty, 3 Watts, 151; Harvey v. Alexander, 1 Rand. 252; Duval v. Bibb, 4 Hen. & Munf. 119; Steele v. Washington, 1 Ohio, 352; Brooks & Brown v. Maltbie, 4 Stew. & P. 105; Phil. Ev. (C. & H.'s Notes,) vol. 4, part 2, p. 619.

2. That Blake Little was made a competent witness for plaintiffs, who were his grantees, by their release.

3. That the declarations of Buffington, who was proved to be dead at the time of the trial, and who was in possession of the negroes when the declarations were made, were competent to show how and under whom he held possession, and were offered for no other purpose.—Mims v. Sturdevant, 23 Ala. 644.

4. That the charges of the court were correct.

CHILTON, C. J.—The law which must govern this case is simple and easy of application. Both parties claim under a purchase from Blake Little,—Hair, by bill of sale, dated 26th May, 1848; and the plaintiffs below, by conveyance, dated the 29th of the same month. Each party insists that the purchase of the other is fraudulent and void. Hair, having the possession, and being the defendant, was entitled to hold the slaves, unless the plaintiffs below could show a right to the property. The plaintiffs in this, as in all cases, to maintain their action, must show a right to recover. Until this is done, the defendant may remain passive. Of course, we

confine our remarks to those cases in which the *onus* is not, by the pleading, cast upon the defendant.

1. The deed to the plaintiffs purports to have been made upon a valuable, a moneyed consideration, in hand paid. It appears that only $800 in money was paid, and the balance was to be paid in discharge of certain demands due and owing from the grantor. Proof of the undertaking to pay these demands, as a part of the consideration, was objected to by the defendant, but was allowed. This proof was properly admitted. It did not vary the legal effect of the deed, and was not inconsistent with the consideration expressed, which was a *valuable* consideration.—4 Phil. Ev. pp. 619-620, n. 309, ed. 1850.

2. The objection taken to the testimony of Blake Little cannot be sustained. Concede that his interest is not balanced, and that he was interested; yet the defendant should have raised that objection distinctly before he was examined, as he must have been apprised of his interest when the interrogatories propounded to him were crossed.—Hudson v. Crow, 26 Ala. Rep. 515.

3. The declarations of Buffington, which were objected to, were properly received. He was in the actual possession of a portion of the property in controversy; and his declarations tended to explain that possession, and were evidently part of the *res gestae,* and as such admissible.

4. If Jones acted in concert with Hair, and was guilty of the joint trespass complained of, he was guilty to the same extent with Hair; and if the latter did acts which would authorize the jury in giving exemplary damages, Jones, acting in concert with Hair, is liable with him, and to the same extent.—Layman v. Hendrix, 1 Ala. Rep. 212, and cases there cited.

5. We cannot say that there was no proof *at all tending* to show that the jury might not go beyond the actual damage. The question of its sufficiency was not raised in the court below, and is not before us. We are of opinion that the first charge as to smart money was not wholly abstract. The evidence may have been exceedingly weak; but, if there was *any proof tending* to show circumstances of aggravation, it will support the charge.

6. There can be no question, that the party who alleged fraud in the purchase of the other was bound to prove it. The law does not presume fraud,—it must be proved. The respective conveyances are valid upon their face. When impeached for fraud, the *onus* is changed. The party whose deed is thus impeached, must then overcome the evidence of fraud by counter evidence of its fairness.

7. As to the *criteria* of damages given to the jury by the first charge, we see nothing improper. The charge announces the proposition, that the jury may give the highest value of the property at any time between the taking and the trial, and interest thereon, or they might look to the value of the property and hire as some guide in coming to a conclusion, but were not bound by them. The question was, what injury the plaintiffs had sustained by the trespass and the taking away of their property. All the evidence was before the jury; and we think there was no error in saying to them, that the value of the property, as well as of the hire, is *some* guide, though not conclusive, in arriving at a conclusion as to the injury.

8. We decided at the last term that exemplary damages, or "smart money" as it is sometimes called, may be recovered, where the circumstances justify it, in actions of trespass. Parker v. Mise, 27 Ala. 480.

9. As to the playful remark of the judge, in illustration of the object of giving exemplary damages, and the measure of such damages, it is only necessary to remark, that, while we are satisfied his honor did not intend to give to the jury any intimation as to what he thought their finding upon the facts should be, yet, it was calculated to impress them with the belief that the judge thought the facts such as would require them to give heavy exemplary damages. It is of the highest importance in the administration of justice, that the court should never invade the province of the jury,—should give them no intimation as to his opinion upon the facts, but should leave them wholly unbiased by any such intimation, to ascertain the facts for themselves. We cannot shut our eyes to the fact, that juries, especially in cases which are strongly litigated upon the facts, watch with anxiety to gather from the court some intimation as to what the judge thinks should

be their finding upon the facts. They do not usually fully comprehend the line of demarkation which separates the duties of the court from those of the jury. It would not readily occur to one, uninstructed in the legal profession, why the judge, who is a sworn officer of the law, impartial as between the parties, sitting upon the trial of the cause, and who hears all the evidence, might not, with much propriety, give his opinion as to the result of the facts. Hence the jury, in the most perfect good faith, are ordinarily inclined to give weight to what they suppose to be the inclination of the mind of the judge upon the facts. But it pertains to the judge to declare the law applicable to the case. He has nothing further to do with the facts, than as furnishing the basis for his charge; while the jury are the triers of the facts under the law as given them in charge by the judge, who, upon contested questions of fact, should sedulously avoid giving the least intimation as to his own opinion. After they have found their verdict, the judge may then act upon his opinion of the facts in awarding a new trial, if he thinks the jury have found wrong. We think the illustration, though playfully given by the court, was well calculated to mislead the jury,—was an invasion of their province, and cannot be supported as a correct application of the rule as respects the question of exemplary damages.

10. The first charge given at the request of the plaintiffs below, cannot be supported. Conceding the validity of Hair's purchase, and of his hiring to Mrs. Little, the subsequent absolute sale was in contravention of the rights of the bailor, contrary to the design of the bailment, and a clear violation of the contract by which Hair agreed that the slaves should be kept by Mrs. Little. The absolute sale to the plaintiffs by Blake Little enabled the purchasers to hold, from that time, adversely to Hair; and if the court was correct in this charge, then, if the hiring had been for seven years, the right of Hair to the property might have been defeated; for, if the purchasers are entitled to hold as having *purchased* the *term*, under their claim of the *absolute interest*, for a period of more than six years, their title would be perfected by the statute of limitations. Such is not the law. The moment the bailee dis-affirmed the contract of bailment, and sold the

property in derogation of the rights of the bailor,—thus using it in a manner not contemplated by, but in violation of the contract,—the bailor had the right to resume his property, if he could get possession peaceably; and the record in this case shows no evidence that any force was used.—See Stark. Ev., pt. 4, p. 1491; 2 Strob. Eq. 475, note.

For the errors noted, let the judgment be reversed, and the cause remanded.