## LOGAN *vs.* THE MOBILE TRADE COMPANY.

[ACTION AGAINST COMMON CARRIER FOR DAMAGES TO GOODS, &C.]

1. *Bill of lading ; how construed.*—A bill of lading is a contract, the language of which is subject to the rules of construction which govern other contracts.
2. *Same ; recitals and stipulations in, obligation and effect of.*—The recitals and stipulations of a bill of lading were as follows : "Shipped in good order and condition by Jewett, Hall & Co.————(on account and risk of whom it may concern) on board the good steamboat called the Virginia and Mobile Trade Company, whereof————is master, for the present voyage, now lying at the port of St. Louis, Mo., and

Logan v. The Mobile Trade Compony.

bound for Montgomery, Ala., the following packages or articles marked and numbered as below, which are to be delivered, without delay, in like good order and condition at the aforesaid port, (the damages of the river, fire and unavoidable accident only excepted,) unto Rufus L. Logan or their assigns, he or they paying freight for said goods at the rate of 30 cents per 100 lbs. to New Orleans, $1.98 per bbl. flour (through), and $6.35 per cask, $3.05 per tierce bacon, and 93 cents per box crackers, thence to Montgomery, In witness whereof the owner, master or clerk of said steamboat subscribes to four bills of lading, all of this tenor and date, one of which being accomplished the others to stand void. Dated at St. Louis, Mo., this 2d day of October, 1866." (Here follows a description and weight of the goods.) "Privilege of re-shipping at New Orleans and Mobile," (signed,) "Jewett, Hall & Co., Agt's, M. T. Co." 'It is understood and agreed that the above goods are to be sent through at above rates, if any boats are going through to Wetumpka," (signed,) "Jewett, Hall & Co., Agt's, Mobile Trade Co." *Held,* that it imposes an obligation on the party making it to send the goods therein named "through to Wetumpka," either from Mobile or Montgomery, " if any boats are going through to Wetumpka," when the goods are delivered either at Mobile or Montgomery.

3. *Same; party making, for what liable.*—If such goods are so forwarded, by the party making said bill of lading, to Wetumpka, either from Mobile or from Montgomery, the said party becomes liable for illegal injuries to the same, whether sent by boats of the maker of the bill of lading or by those of another owner.

This is an action by appellant against appellee, a common carrier, for damages to goods in shipment. The bill of lading is set out at length in the opinion. On part of appellant it was in proof that the freight was discharged from the "Nyanza," appellees' boat, at Montgomery, received by Terry, appellees' agent, and remained on the wharf for five days, when it was shipped by the agent to Wetumpka, on the "Montgomery," a boat not owned by appellees ; that the "Montgomery" looked to the appellees for charges, and that the freight was not delivered to the appellant at Montgomery. There was evidence tending to show that the "Nyanza" engaged to carry said freight to Wetumpka. There was evidence showing the damaged condition of the freight when landed at Montgomery, and additional damage sustained between Montgomery and Wetumpka. It was further proved by appellant that during the time of this shipment three safe boats were running from Mobile through to Wetumpka. On part of

appellee, there was proof tending to show that the "Nyanza" did not run through to Wetumpka, and was not engaged to carry this freight through to that point. Upon these facts the court charged the jury,.(among other things,) that "the legal effect of the bill of lading, and the note appended to it was an undertaking by the defendants to deliver the goods at Montgomery, and from that point to send them to Wetumpka, should there be any boats going through to the latter place; that upon a delivery of the goods at Montgomery, according to the terms of the bill of lading, the liability of the defendants as common carriers would cease; that after such delivery their liability, by virtue of the note appended to the bill of lading would be that of agents for the re-shipment of the goods to Wetumpka, and that if the defendants observed the proper degree of care in re-shipping the goods to Wetumpka from Montgomery, they would not be liable for any damage done to the goods by the negligence or carelessness of the officers and crew of the steamer 'Montgomery,' after they had received the goods." The appellant excepted to this charge, as well as to the refusal of the court to give the following charge :

1. If the jury believed from the evidence that the "Nyanza" was in the employment of the defendants, and engaged to carry said freight to Wetumpka, but concluding not to go to Wetumpka, landed the freight at Montgomery, and sent it forward by the steamer "Montgomery" to Wetumpka, then the defendants are liable for the negligence and carelessness of the officers and crew of the "Montgomery" in regard to this freight.

The charges given, and those refused by the court, are now assigned as error.

SMITHS & HERNDON, for appellant.
DARGAN & TAYLOR, contra.

(No briefs came into Reporter's hands.)

PETERS, J.—This case depends upon the construction

of the bill of lading upon which this suit is founded. This contract is in these words, viz:

"JEWETT, HALL & Co.,

"<i>Produce and Commission Merchants,</i>

"No. 22 South Main street, (Merchants' Exchange Block,)

"St. Louis, Missouri.

"Shipped, in good order and condition, by Jewett, Hall & Co.,————————(on account and risk of whom it may concern,) on board the good steamboat called the Virginia and Mobile Trade Company, whereof————————is master, for the present voyage, now lying at the port of St. Louis, Mo., and bound for Montgomery, Ala., the following packages or articles marked and numbered as below, which are to be delivered, without delay, in like good order and condition, at the aforesaid port, (the damages of the river, fire, and unavoidable accident, only excepted) unto Rufus L. Logan or his or their assigns, he or they paying freight for said goods, at the rate of 30 cents per 100 lbs. to New Orleans, $1.98 per bbl. flour through, and $6.35 per cask, $3.15 per tierce bacon, and 93 cents per box crackers, thence to Montgomery.

"In witness whereof the owner, master or clerk of said steamboat subscribes to four bills of lading, all of this tenor and date, one of which being accomplished, the others stand void.

"Dated at St. Louis, Mo., the 2d day of October, 1866.

| "<i>Marks.</i> | <i>Articles.</i> | <i>Weight.</i> |
|---|---|---|
| R. T. L. | 1 cask sides, | 1052 |
| Wetumpka, | 1 tierce hams, | 476 |
| Ala. | 8 boxes crackers, | 309 |
| Logan, | 100 bbls. flour (various brands.) | |
| Wetumpka, | Privilege of re-shipping, | |
| Ala. | at New Orleans and Mobile. | |

JEWETT, HALL & Co., Agt's,

M. T. Co.

"It is understood and agreed that the above goods are to be sent through at above rates, if any boats are going through to Wetumpka.

JEWETT, HALL & Co., Ag'ts Mobile Trade Co.

This bill of lading is in the usual form, except the stipulation at the foot.—Abbott on Shipment, 216, 217. It was offered to the jury in evidence without objection. And the question which arises upon the instrument thus set forth is, did it bind the trade company to deliver the goods mentioned therein, at Wetumpka, under any circumstances, or only at Montgomery ? A bill of lading is a contract, which binds the parties to it according to the meaning of the language in which it is expressed. And the words of the instrument are to be taken most strongly against the party employing them. *Verba chartarum fortius accipiuntur contra proferentem.*—Broom's Max. ; 2 Pars. on Cont. p. 506, 5th ed. It does not alter the force or construction of a contract that the several stipulations it may contain are separately signed by the party making it. This is but the effect of the general signature at the foot of the instrument, when it is signed as a whole. Here the understanding and agreement that the goods were to be " sent through to Wetumpka," was to be controlled by the condition, " if the boats are going through to Wetumpka." The most reasonable construction of this language is that the trade company bound itself to deliver the goods at Wetumpka, if after reaching Montgomery there were boats going thence to Wetumpka. Otherwise, the stipulation fixing the " rates" of the freight would be absurd. " The above rates " means the rates already fixed. This would not have been done unless the trade company intended to assume the responsibility, and to fix a compensation for it. The language will reasonably bear the construction above given ; it is the most favorable to the plaintiff below, and he is entitled to it. It may also be said with equal reason, as the defendant below was entitled to re-ship the goods at Mobile, that it was bound to re-ship from that port " through to Wetumpka." The language of the bill of lading does not confine the shipment " through to Wetumpka " to the boats of the trade company, but it is extended to " any boats going through to Wetumpka." The bill of exceptions shows that there was some proof tending to establish the fact that the goods mentioned in the bill of

lading might have been sent through from Mobile to We-tumpka, and also that they were sent by the trade company from Montgomery through to Wetumpka. In the one case as well as the other, if the goods were sent by the trade company, and injured on the way, except for the causes set out in the bill of lading, the defendant in the court below became liable to plaintiff for the injury thus sustained.

The charge of the court below is hostile to this construction of the contract or affreightment contained in the bill of lading. In this the learned judge erred.

The court also erred in refusing to give the first charge asked by the plaintiff in the court below. There was some testimony tending to prove the facts on which it was based. That this testimony was very weak, or was contradicted by other evidence before the jury, did not justify the court in refusing a proper charge based upon it. No charge is abstract when there is the slightest testimony to support it. The court cannot judge of this. It must be left to the jury, upon a proper charge of the law from the court.—*Partridge v. Forsyth*, 29 Ala. 200 ; 28 Ala. 236. The charge here asserted a correct legal proposition, and should have been given. It was, therefore, error to refuse it.

It is probable that the question raised upon the second charge asked by the plaintiff below, and refused by the court, may not again arise upon a new trial. Its discussion is, therefore, omitted.

For the errors above pointed out, the judgment of the court below is reversed, and the cause is remanded for a new trial.