(92 South. 780)

**AMERICAN RY. EXPRESS CO. v. DUNNAWAY & LAMBERT.  (2 Div. 783.)**

(Supreme Court of Alabama.   April 27, 1922.)

1. Carriers 228(1)—Proof of delivery of hog in good condition and failure to deliver held to create presumption shifting burden of proof to carrier.

Proof that the hog was delivered to the carrier in good condition, and that it was not redelivered to the owners to whom it had been consigned, created a presumption that the loss of the hog was due to the negligence of the carrier, and shifted the burden of proof to the carrier to acquit itself of the presumption of law that the loss was caused by its negligence.

2. Carriers 230(4)—Leaving question of cause of death of hog in shipment to jury held proper.

In an action by the shipper against a carrier for death of a hog in shipment, where plaintiff's evidence tended to show that the death of the hog was caused by negligent transporting in a sealed car not properly ventilated, and defendant's evidence tended to show that the death was caused by a disease contracted by the hog before it was delivered to the carrier, a refusal to give a general affirmative

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

charge for defendant, and leaving the question of the cause of the death of the hog to the jury, was proper.

**3. Trial ⟐194(15)—Statement by court in charge that facts in question were practically admitted held error as being a comment on the evidence.**

In an action for death of hog in shipment, a charge stating that the question was a point of law, and that "the facts are practically admitted," *held* error, in view of conflict in the evidence as to what caused the death of the hog, as being a comment on the evidence by the court.

Appeal from Circuit Court, Dallas County; S. F. Hobbs, Judge.

Action by Dunnaway & Lambert, a partnership against the American Railway Express Company, for damages for the death of a hog. Judgment for the plaintiff, and the defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

Arthur M. Pitts, of Selma, for appellant.

The court erred in its statement to the jury that it was a point of law, the facts were practically admitted, and that, if the court committed error, the company had its appeal. 54 Ala. 265; 140 Ala. 137, 37 South. 223; 8 Ala. App. 207, 62 South. 328. The court also erred in its charge as to the burden of proof. 123 Ala. 683, 27 South. 323; 164 Ala. 206, 51 South. 314. The appellant was not an insurer. 226 U. S. 490, 33 Sup. Ct. 158, 57 L. Ed. 309; 91 Ala. 340, 8 South. 649; 10 C. J. 380. Counsel discuss other assignments of error not treated in the opinion.

Mallory & Mallory, of Selma, for appellee.

This case is on all fours with the case of the same title reported in 17 Ala. App. 649, 88 South. 60, and the brief might end here, but we call attention to the following authorities: 164 Ala. 206, 51 South. 314; 169 Ala. 265, 52 South. 918, 29 L. R. A. (N. S.) 1214, Ann. Cas. 1912B, 389; 52 Ala. 614, 23 Am. Rep. 578. There was no error in the charge as to the burden of proof. 5 Ala. App. 1, 59 South. 552; 164 Ala. 206, 51 South. 314. Counsel discuss other matters not treated in the opinion.

MILLER, J. J. E. Dunnaway and Joe Lambert, partners under the firm name of Dunnaway & Lambert, sue the American Railway Express Company, a corporation, for $1,000 damages for failure to deliver one hog received by it as a common carrier at Middle Point, Ohio, to be delivered to plaintiffs, for a reward, at Birmingham, Ala., which it failed to deliver. The case was tried on plea of general issue. No special pleas were filed. The jury returned a verdict in favor of plaintiff; judgment was rendered thereon by the court, and from it the defendant appeals.

[1, 2] The plaintiffs introduced evidence showing or tending to show the hog belonged to them, its value was $500, and its weight 947 pounds; it was delivered to the defendant at Middle Point, Ohio, to be shipped by express to plaintiffs at Birmingham, Ala.; its condition was apparently good; it was properly crated for shipment; the express charges were paid, based on its value and weight; the hog was never delivered to plaintiffs, and the hog from the time of delivery to the defendant was in its exclusive control, care, and custody. It was agreed that defendant was a common carrier. A witness for the plaintiff testified:

"I never knew of hogs or live stock being shipped in sealed express cars. A hog will die quicker than any other domestic animal. I have known during my experience in dealing with hogs for them to come in contact and die within a short time with congestion and pneumonia. They will die quickly from want of ventilation."

The evidence for the plaintiff also tended to show that the hog had no symptoms of any disease or abnormal condition when delivered to the defendant; that it was at that time free from any disease and in sound condition; that its temperature was taken by a veterinarian, and it was normal; that no symptoms of pulmonary congestion or any abnormal condition of the lungs appeared, and they would have been observable at that time if they existed; the symptoms indicated a sound condition at the time of delivery to defendant; that the hog was not placed in a sealed car at Middle Point, Ohio, and the car was not sealed before leaving there.

This proof by the plaintiffs under the issue made out a prima facie right to recover for the loss of the hog. It created a presumption that the loss of the hog was due to the negligence of the defendant. Thereby the burden of proof shifted from the plaintiff to the defendant; and the burden was on the defendant then to acquit itself of the presumption of law, based on that evidence, that the loss of the hog was caused by its negligence. So. Ex. Co. v. Ramey, 164 Ala. 206, 51 South. 314; A. C. L. R. R. Co. v. Rice, 169 Ala. 265, 52 South. 918, 29 L. R. A. (N. S.) 1214, Ann. Cas. 1912B, 389.

In So. Ex. Co. v. Ramey, 164 Ala. 206, 51 South. 314, this court wrote:

"Express companies are common carriers; and in an action against such a company the plaintiff establishes a prima facie right to recover for the loss of his property upon proof of delivery thereof to the carrier and the failure to redeliver them—the onus probandi then passing to the carrier to exculpate itself from

the presumptive imputation that the loss was occasioned by its negligence."

The evidence for the defendant showed, or tended to show, that it received the hog at 12 o'clock m. October 4, 1918; that prior to loading the hog was watered and fed; it was placed in an express car where a draft could not get on it, and the express car was sealed; between 12 and 1 o'clock it left for Cincinnati, Ohio. The express car with the hog in it reached Cincinnati at 7:34 p. m. of the same day, and the car was unloaded. The hog was found to be sick; it was placed where the wind could not blow on it, and was rushed by auto truck to the warehouse, and a veterinary surgeon was called, but the hog died before the doctor reached it. A post mortem was held, no bruises, cuts or external injuries were found on it. The doctor testified the hog died from "pulmonary congestion, and abnormal condition of the lungs, involving blood vessels of this important organ which caused the heart disturbance, collapse, and death; * * * excitement caused from the shipment aggravated the trouble," which in his opinion "had existed with said hog for some time, at least 20 days, as shown by the post mortem." The defendant then offered in evidence the contract of shipment. Section 8 reads as follows:

"The shipper agrees that, as a condition precedent to recovery hereunder for loss or injury or damage to or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the shipper to have been caused by negligence of the carrier, and in consideration of the free carriage of a person or persons as his agent or agents in charge of said animals where permitted under the Terminal and Switching Charges Tariff I. C. C. No. A. 2095, supplements thereto and reissues thereof to indemnify and save harmless the express company from all claims, liabilities and demands of every kind, nature and description by reason of personal injuries sustained by said person or persons so in charge of said animals whether the same be caused by negligence or otherwise."

Under this conflicting evidence the cause of the death of the hog was properly left for the jury to determine. S. & N. A. R. Co. v. Henlein, 52 Ala. 606, 23 Am. Rep. 578. The evidence for the plaintiff tended to show its death was caused by the defendant, its agents or servants negligently transporting it in a sealed car, not properly ventilated. The evidence of defendant tended to show the death of the hog was caused by no negligence of it or its servants but from a disease contracted by the hog many days before it was delivered to the defendant, for which it was in no way liable or responsible. This conflicting testimony made the case one for the jury to settle and decide from the evidence. Hence the court did not err in refusing to give the general affirmative charge, with hypothesis, requested by the defendant. L. & N. R. R. Co. v. Lancaster, 121 Ala. 471, 25 South. 733.

[3] The court charged the jury orally as follows:

"The whole thing is a point of law. The facts are practically admitted. The question is solely as to where the law places the burden of proof and I am charging you just as plainly as I know how, so that, if I bring it to your attention in any way in which it is not in exact accordance with the rules laid down under the Carmack Amendment and other federal laws, Mr. Pitts can have the benefit of it on appeal."

Chief Justice Chilton in Hair v. Little, 28 Ala. 248, wrote clearly for the court on this subject as follows:

"It is of the highest importance in the administration of justice, that the court should never invade the province of the jury—should give them no intimation as to his opinion upon the facts, but should leave them wholly unbiased by any such intimation, to ascertain the facts for themselves. We cannot shut our eyes to the fact that juries, especially in cases which are strongly litigated upon the facts, watch with anxiety to gather from the court some intimation as to what the judge thinks should be their finding upon the facts. They do not usually fully comprehend the line of demarkation which separates the duties of the court from those of the jury. It would not readily occur to one, uninstructed in the legal profession, why the judge, who is a sworn officer of the law, impartial as between the parties, sitting upon the trial of the cause, and who hears all the evidence, might not, with much propriety, give his opinion as to the result of the facts. Hence the jury, in the most perfect good faith, are ordinarily inclined to give weight to what they suppose to be the inclination of the mind of the judge upon the facts. But it pertains to the judge to declare the law applicable to the case."

The court was in error in stating to the jury: "The facts are practically admitted." The evidence was in direct conflict, by positive proof or clear inferences therefrom, on matters material to the issue. The liability of the defendant under the evidence was a jury question. A trial judge should be careful in words and manner not to indicate his views as to the effect of the evidence. The judge should studiously avoid giving the least intimation to the jury as to his opinion on contested questions of facts from the evidence. The jury knew Mr. Pitts was representing the defendant. The court told the jury "the facts are practically admitted;" it is a question of law, the burden of proof; it will be made plain; and, if I err in any way, "Mr. Pitts can have the benefit of it on appeal." The court did not state he was making it plain as, if there was error, Mr. Pitts, representing the defendant, or Mr. Mallory, representing the plaintiffs, or either party would have the benefit of the error, if any, on appeal.

There is at least an intimation or inference that the court expected the jury to decide the "facts"— "practically admitted"— against Mr. Pitts, the defendant's attorney, and the defendant would have to appeal. We are sure the presiding judge did not intend thereby to influence the jury in favor of the plaintiffs, and that he not intend to be unfair to the defendant and partial to the plaintiffs. The statements were made by him under the impulse of the moment, due, no doubt, to argument of counsel on the law to the court, or on the facts to the jury; but it appears to us that it probably injuriously affected the substantial rights of the defendant, and it was therefore error, for which the case must be reversed. Hair v. Little, 28 Ala. 236; Furhman v. Mayor, 54 Ala. 263; Andrews v. State, 150 Ala. 56, 43 South. 196; Lamar v. King, 168 Ala. 285, 53 South. 279.

The plaintiffs by their testimony as presented complied, prima facie, with the burden of proof placed on them by the law and by the contract. So. Ex. Co. v. Ramey, 164 Ala. 206, 51 South. 314. And, under the evidence as presented, it is unnecessary for us to decide whether or not that part of the contract as to the burden of proof is contrary to public policy, and, if so, it is therefore void.

This court, in A. C. L. R. Co. v. Rice, 169 Ala. 269, 52 South. 919, 29 L. R. A. (N. S.) 1214, Ann. Cas. 1912B, 389, has declared the rule as to the burden of proof placed on defendant in cases like this, after plaintiffs have made out a prima facie case, to be as follows:

"In the absence of contract limiting liability, the rule here is that a common carrier, in cases of loss or damage to live animals received for shipment, is an insurer against such loss or damages as do not arise from the act of God, the public enemy, and those arising from the nature and propensities of the live animals so received for transportation, and against which due care could not provide. And to avail in exoneration of legally unmodified liability of the common carrier for the loss or damage of a consignment received by it, the burden is on the carrier to trace the loss or damage to negligence of the shipper, or to one or more of the exceptions, with which its negligence did not concur."

There are many errors assigned, based on exceptions to parts of the oral charge of the court, and on written charges requested by the defendant and refused by the court, which we have not separately discussed, considered, and passed on in this opinion. It is not necessary for us to do so. There is no probability that they will be presented again in the same form; and what has been written is sufficient to guide the court on another trial.

For the error mentioned, the judgment is reversed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.